UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JULIO ANDRADE, LEOBARDO RODRIGUEZ,       :
and LUIS ALBERTO JUAREZ,

                                         :       14 Civ. 8268 (JPO) (AJP)

             Plaintiffs,

                                         :       **REPORT & RECOMMENDATION**

             -against-

                                         :

168 FIRST AVE RESTAURANT LTD. (d/b/a
LANZA'S), JOSE ALONSO, and ARISTIZABAL   :
EDILSON,

                                         :

             Defendants.

                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge.**

**To the Honorable J. Paul Oetken, United States District Judge:**

             The Court entered a default judgment for plaintiffs Julio Andrade, Leobardo

Rodriguez and Luis Alberto Juarez against all of the defendants.  (Dkt. Nos. 25, 35.)  On April 18,

2016, Judge Oetken referred this FLSA/NYLL case to me for an inquest as to damages.  (Dkt. No.

36: Amended Order of Reference.)

             For the reasons discussed below, the Court should enter judgment for the plaintiffs

against all defendants, jointly and severally, for damages as follows: Andrade $101,751.66,

Rodriguez $312,785.94, and Juarez $128,122.01, plus continuing prejudgment interest until

judgment is entered, as well as attorneys' fees and costs of $11,700.

## FACTS

             "Where, as here, 'the court determines that defendant is in default, the factual

allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"

Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.)

(quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil 3d § 2688 at 58-

59 (3d ed. 1998)).

**The Complaint**

      The complaint (Dkt. No. 1) alleges as follows:

      Defendants own and operate Lanza's, a restaurant located at 168 First Avenue in

Manhattan.  (Compl. ¶¶ 1-3, 16-20.)  Defendants Jose Alonzo and Aristizabal Edilson each is an

"owner, officer and/or agent" of defendant corporation 168 First Ave Restaurant Ltd., and

"determined the wages and compensation of the [restaurant's] employees . . . including Plaintiffs,

and has established the schedules of the employees, has maintained employee records, and has had

the authority to hire and fire employees."  (Compl. ¶¶ 18-19.)

      Plaintiff Julio Andrade worked for defendants as a busser and delivery person from

July 2012 until October 2014.  (Compl. ¶¶ 33-34.)  Plaintiff Leobardo Rodriguez worked for

defendants as a dishwasher, porter and salad preparer from November 2007 to March 2013, and as

a cook from April 2013 to October 2014.  (Compl. ¶¶ 57-58.)  Plaintiff Luis Juarez worked for

defendants as a dishwasher from October 2008 to December 2008, a salad preparer from December

2008 until December 2010, and as a cook and pasta preparer from December 2010 to October 2014.

(Compl. ¶¶ 80-81.)

      During their employment, plaintiffs regularly worked more than ten hours per day

and more than forty hours per week.  (Compl. ¶¶ 38-43, 61-67, 84-86, 100.)  Defendants did not pay

plaintiffs the minimum wage or overtime compensation required by the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL").  (Compl. ¶¶ 100-02.)  Defendants did not pay

spread of hours for each day that a plaintiff's shift lasted more than ten hours per day.  (Compl. ¶

100.)  Defendants did not inform Andrade that they were taking a tip credit.  (Compl. ¶¶ 103-06.)

Further, defendants did not provide plaintiffs with wage notices or wage statements as required by

the NYLL.  (Compl. ¶¶ 55-56, 77-79, 96, 98-99, 113.)

The complaint alleges that defendants' violations of the FLSA and NYLL were

willful.  (Compl. ¶¶ 108-11.)  The complaint asserts claims for unpaid minimum and overtime wages

pursuant to the FLSA and NYLL (Compl. ¶¶ 120-40), spread of hours pursuant to the NYLL

(Compl. ¶¶ 141-44), statutory damages for violations of the NYLL (Compl. ¶¶ 145-49), and also

seeks liquidated damages (Compl. Wherefore ¶¶ g, o), pre and post-judgment interest (id. ¶ p), and

attorneys' fees and costs (id. ¶ q).

**Inquest Submissions**

**Andrade**

Plaintiff Andrade filed an affidavit stating that he worked for defendants as a busboy

and delivery person from June 25, 2012 until October 2014 (Dkt. No. 39: Andrade Aff. ¶¶ 2-5), and

regularly worked more than ten hours per day (Andrade Aff. ¶ 11-13).  Between July 2012 and

September 2012, Andrade worked one eleven hour shift, three twelve hour shifts, and one thirteen

hour shift each week, for a total of sixty hours per week.  (Andrade Aff ¶ 11.)  Between October

2012 and mid-November 2012, Andrade worked two eleven hour shifts, three twelve hour shifts,

and two eight hour shifts each week, for a total of seventy-four hours per week.  (Andrade Aff. ¶

12.)  Between mid-November 2012 and August 2013, Andrade's schedule varied, working between

five and seven days for sixty-one to eighty hours per week.  (Andrade Aff. ¶ 13.)  Between August

2013 and October 2014, Andrade typically worked four seven hour shifts, one twelve hour shift, and

one thirteen hour shift each week, for a total of fifty-three hours per week.  (Andrade Aff. ¶ 33.)

Between July 2012 and August 2013, Andrade was paid by check at the rate of five

dollars per hour, but only for forty hours a week.  (Andrade Aff. ¶ 17 & Ex. B.)  Between August

2013 and October 2014, Andrade was paid a fixed rate of twenty dollars per day for a single shift

(seven hours), and thirty-five dollars per day when he worked a double shift (twelve hours).

(Andrade Aff. ¶ 19.)  Except for the first week of Andrade's employment, he was not paid overtime.

(Andrade Aff. ¶¶ 17, 24.)  For fourteen weeks in 2012 and 2013, Andrade received no pay at all.

(Andrade Aff. ¶ 18 & Ex. C.)  Defendants never gave Andrade a wage notice with his rate of pay

(Andrade Aff. ¶ 23), and while he sometimes received wage statements, they did not reflect all of

the hours he worked or an accurate hourly rate (Andrade Aff. ¶ 22).  Defendants did not keep track

of Andrade's hours using a time clock (Andrade Aff. ¶ 21), but Andrade kept detailed notes of his

time between August 2012 and August 2013, and May 2014 to September 2014 (Andrade Aff. Ex.

A: Recorded Hours).

### Rodriguez

Plaintiff Rodriguez filed an affidavit stating that he began working for defendants

in November 2007, and was employed as a dishwasher, porter and salad preparer until March 2013,

and as a cook from March 2013 to October 2014.  (Rodriguez Aff. ¶¶ 4-5.)  Throughout his

employment with defendants, Rodriguez regularly worked more than ten hours per day.  (Rodriguez

Aff. ¶¶ 11-16.)  Rodriguez does not provide any detail as to his working hours between November

2007 and October 2008.  Between October 2008 and October 2009, and between October 2010 and

October 2011 as well, Rodriguez worked seven days per week, from 9:45 p.m. until 9:00 a.m., with

one day off each month, typically working between 67.5 and 78.75 hours per week.  (Rodriguez Aff.

¶¶ 11, 13.)  In the intervening year, between October 2009 and October 2010, Rodriguez worked the

same hours, but without the monthly day off,  for a total of 78.75 hours per week.  (Rodriguez Aff.

¶ 12.)  Between October 2011 and March 2013, Rodriguez worked twelve hours per day, six or

seven days per week, for a total of seventy-two to eighty-four hours per week.  (Rodriguez Aff. ¶ 14.)  Between April 2013 and August 2014, Rodriguez worked three thirteen hour shifts and three eleven hour shifts per week, for a total of seventy-two hours per week.  (Rodriguez Aff. ¶ 15.)  Finally, between August 2014 and October 2014, Rodriguez worked three ten hour shifts and one eleven hour shift each week, for a total of forty-one hours per week.  (Rodriguez Aff. ¶ 16.)

Between October 2009 and October 2011, Rodriguez was paid a fixed rate of $65 per day (Rodriguez Aff. ¶ 20), and between October 2011 and March 2013, he was paid a fixed rate of $80 per day (Rodriguez Aff. ¶ 21).  Between April 2013 and September 2013, Rodriguez' daily rate was $100 per day, and it increased between September 2013 and March 2014 to $120 per day.  (Rodriguez Aff. ¶¶ 22-23.)  Finally, between March 2014 and October 2014, Rodriguez was paid $11 per hour for all hours worked.  (Rodriguez Aff. ¶ 24.)  Defendants never gave Rodriguez a wage notice with his rate of pay (Rodriguez Aff. ¶ 27), and while he sometimes received wage statements, they did not reflect all of the hours he worked or an accurate hourly wage (Rodriguez Aff. ¶ 26).  Defendants did not keep track of Rodriguez' hours using a time clock.  (Rodriguez Aff. ¶ 25.)

**Juarez**

Plaintiff Juarez filed an affidavit stating that he worked for defendants as a dishwasher, salad preparer, cook and pasta preparer from October 2008 until October 2014.  (Dkt. No. 41: Juarez Aff. ¶¶ 4-5.)  Between October 2008 and January 2012, Juarez typically worked three twelve hour shifts and three thirteen hour shifts each week, for a total of seventy-two hours per week.  (Juarez Aff. ¶ 11.)  Between January 2012 and October 2014, Juarez worked one seven hour shift, one nine hour shift, and one ten hour shift each week, for a total of twenty-six hours per week. (Juarez Aff. ¶ 12; see Dkt. No. 38: Androphy Aff. ¶ 48.)

Between October 2008 and January 2010, Juarez was paid a fixed rate of $65 per day.

(Juarez Aff. ¶ 16.)  Between January 2010 and January 2012, Juarez' pay was increased to $90 per day.  (Juarez Aff. ¶ 17.)  From January 2012 until the end of his employment, Juurez was paid $130 per day.  (Juarez Aff. ¶ 18.)  Defendants never gave Juarez a wage notice with his rate of pay (Juarez Aff. ¶ 21), and while he sometimes received wage statements, they did not reflect all of the hours he worked or an accurate hourly rate (Juarez Aff. ¶ 20).  Defendants did not keep track of Juarez' hours using a time clock.  (Juarez Aff. ¶19.)

**Plaintiffs' Calculations Chart**

Plaintiffs' attorney attached a chart to his affidavit, dividing plaintiffs' employment into periods based upon their wages and detailing the damage calculation during each period.  (Dkt. No. 38: Androphy Aff. ¶ 57 & Ex. E: Calculations Chart.)  Plaintiffs seek $695,119.86 for unpaid wages, overtime and spread of hours wages, double liquidated damages, penalties for notice and record keeping violations and pre-judgment interest.  (Androphy Aff. ¶ 106 & Calculations Chart.)  Plaintiffs also seek $16,207.50 in attorneys' fees and costs.  (Androphy Aff. ¶¶ 102-05, 107 & Ex. F.)

**ANALYSIS**

**I.      APPLICABLE LEGAL STANDARDS**

The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.  See, e.g., Anderson v. Mt. Clemens Pottery

Co., 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."); Kuebel v. Black & Decker Inc., 643 F.3d 352, 362-64 (2d Cir. 2011); Grochowski v. Phoenix Constr., 318 F.3d 80, 87-88 (2d Cir. 2003); Harold Levinson Assocs., Inc. v. Chao, 37 F. App'x 19, 20 (2d Cir. 2002), cert. denied, 546 U.S. 933, 126 S. Ct. 415 (2005); Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002); Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 66 (2d Cir. 1997); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, 15 Civ. 2158, 2015 WL 5710320 at *2 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.); Carrasco v. W. Village Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *2 (S.D.N.Y. July 11, 2012) (Peck, M.J.), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012).[1]

---

[1]    See also, e.g., Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *2 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Alejo v. Darna Rest., 09 Civ. 5436, 2010 WL 5249383 at *3 (S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), R. & R. adopted as modified, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388-89 (E.D.N.Y. 2007); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *23-24 (S.D.N.Y. Feb. 1, 2007) (Lynch, D.J.); Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 332-33 (S.D.N.Y. 2005); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *3 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Mascol v. E & L Transp. Inc., 387 F. Supp. 2d 87, 93-94 (E.D.N.Y. 2005); Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (Lynch, D.J.); Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002), aff'd as modified on other grounds, 66 F. App'x 261 (2d Cir.), cert. denied, 540 U.S. 1047, 124 S. Ct. 807 (2003); Cao v. Chandara Corp., 00 Civ. 8057, 2001 WL 34366628 at *4-5 (S.D.N.Y. July
(continued...)

## II.     APPLICATION OF THE STANDARDS TO THIS CASE

The Court has reviewed plaintiffs' affidavits and damages chart (see pages 3-8 above) and accepts plaintiffs' estimates of hours worked.

### A.     Statute of Limitations

Plaintiffs bring claims pursuant to the FLSA and NYLL.  The statute of limitations is six years under the NYLL and two years under the FLSA, increased to three years for "willful" violations.  See N.Y. Labor Law § 198(3); 29 U.S.C. § 255(a).  Plaintiffs allege that defendants' FLSA and NYLL violations were willful.  (Dkt. No. 1: Compl. ¶¶ 108-11; see page 3 above.)  By virtue of the entry of default, the Court accepts plaintiffs' allegation as true.  See, e.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *3 (S.D.N.Y. Sept. 15, 2015) (Peck, M.J.); Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL 3855285 at *1, *3 (S.D.N.Y. June 19, 2015); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *4 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Wicaksono v. XYZ 48 Corp., 10 Civ. 3635, 2011 WL 2022644 at *6 (S.D.N.Y. May 2, 2011) ("[T]he defendant is in default, and therefore the plaintiffs' allegation that its conduct was willful is credited."), R. & R. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725, 2010 WL 4159391 at *2 (S.D.N.Y. Sept. 30, 2010) (Chin, D.J.) ("[D]efendants defaulted and thus plaintiffs' allegations that the FLSA violations were willful are deemed admitted.").

Thus, the three-year statute of limitations applies to plaintiffs' FLSA claims, and the

---

1/      (...continued)
25, 2001); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 624-25 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.).

six-year statute of limitations applies to the NYLL claims.  Since plaintiffs' complaint was filed on October 16, 2014, they are entitled to recover damages for FLSA violations beginning on October 16, 2011, and for NYLL violations beginning on October 16, 2008.

    **B.**    <u>**Minimum Wage and Overtime Pay**</u>

        The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked,  29 U.S.C. § 206, and the state minimum wage if it exceeds the federal minimum wage.  <u>See</u> 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").  The statutory minimum wage in New York between January 1, 2007 and December 30, 2013 was $7.15 per hour.  N.Y. Labor Law § 652(1).  After July 24, 2009, the federal minimum wage was $7.25 per hour.  <u>See</u> 29 U.S.C. § 206(a)(1)(C).  From December 31, 2013 to December 30, 2014, New York's minimum wage was $8.00 per hour.  N.Y. Labor Law § 652(1).  Thus, prior to July 24, 2009 plaintiffs were entitled to $7.15 per hour; between July 24, 2009 and December 30, 2013, plaintiffs were entitled to $7.25 per hour; and plaintiffs were entitled to $8.00 per hour after December 30, 2013.

        The FLSA allows an employer to pay "tipped employees" an hourly rate less than the federal minimum wage by crediting a portion of the actual amount of tips received by the employee against the required hourly minimum wage, but only if the employer informed the employee of the tip credit rules.  29 U.S.C. § 203(m).  "Courts have interpreted that provision to require that an employer satisfy two conditions: (1) inform the employee of the 'tip credit' provision of the FLSA, and (2) permit the employee to retain all of the tips the employee receives to qualify for the tip credit."  <u>Khereed</u> v. <u>W. 12th St. Rest. Grp. LLC</u>, 15 Civ. 1363, 2016 WL 590233 at *2 (S.D.N.Y. Feb. 11, 2016) (quotation omitted).  Likewise, under the NYLL, employers are entitled to a tip credit

for food service workers.  12 N.Y.C.R.R. § 146-1.3(b).  Similar to federal law, an employer may not

take a state tip credit, however, unless the employer has given the employee written notice stating:

(1) the amount of tip credit to be taken against the hourly minimum wage; and (2) that extra pay is

required if tips are insufficient to bring the employee up to the basic minimum hourly rate.  12

N.Y.C.R.R. § 146-2.2(a); see also id. § 146-1.3 ("An employer may take a credit towards the basic

minimum hourly rate if [the tipped employee] receives enough tips and if the employee has been

notified of the tip credit as required in section 146-2.2 of this Part.").  The employer must provide

the notice in English and "any other language spoken by the . . . employee as his/her primary

language," and retain an acknowledgment of receipt of such notice for six years. 12 N.Y.C.R.R. §

146-2.2(a), (c).

Plaintiffs' counsel described the methodology employed to determine plaintiffs'

unpaid overtime and minimum wages as follows:

> The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs
> should have been paid per week during each pay period. The actual formula
> used in this column is as follows:
>
> > ((greater of minimum wage or calculated base pay) * Hours Per
> > Week up to 40) + ((greater time and a half rate) * (Hours Per Week
> > over forty, if any))
>
> The chart therefore automatically determines whether the effective calculated
> base rate of pay falls below the minimum wage, and if it does, it discards it.
> If it does not, it uses it for the subsequent calculations (as the Plaintiff is
> entitled to earn at least the minimum wage). The chart then automatically
> calculates what the hours should have been compensated at under the base
> rate of pay up to the first 40 hours of work per week, and then at time-and-a-
> half pay for any hours over 40. The Chart then subtracts the amount actually
> paid to Plaintiff (the "Credited Weekly Pay") and then derives the
> "Underpayment per Week." This number is then multiplied by the number
> of weeks in each period [to derive] the total damages due for unpaid
> minimum wages and overtime for each period ("Unpaid Wages & OT").

(Dkt. No. 38: Androphy Aff. ¶ 59.)

While plaintiff Andrade's weekly checks indicated that defendants were taking a tip credit against their minimum wage obligation to him (see Dkt. No. 39: Andrade Aff. Ex. B), defendants were not entitled to take a tip credit under the FLSA or the NYLL, since there is no evidence that defendants orally advised Andrade of his right to an undiminished wage if his tips fell short of the tip credit taken, or of his right to be paid the minimum wage, nor is there evidence that defendants provided Andrade notice of the tip credit in Spanish, his native language. (See Andrade Aff. ¶ 26.) See, e.g., Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 466-67 (S.D.N.Y. 2015); Kim v. Kum Gang, Inc., 12 Civ. 6344, 2015 WL 2222438 at *24 (S.D.N.Y. Mar. 19, 2015); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 313483 at *18-19 (S.D.N.Y. Feb. 1, 2007) (Lynch, D.J.).   Thus, the Court agrees with plaintiffs' counsel's methodology for determining plaintiffs' unpaid overtime and minimum wages, and has reviewed the arithmetic in the chart provided. (Androphy Aff. Ex. E: Calculations Chart.)  Plaintiffs are entitled to unpaid overtime and minimum wages as follows: Andrade $44,916.82; Rodriguez $152,467.19; Juarez $76,153.  (Androphy Aff. ¶¶ 71-73 & Ex. E.)

## C.   Spread of Hours Pay

Under New York law, an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required by [New York's minimum wage law], for any day in which . . . the spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-2.4.  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."   12 N.Y.C.R.R. § 146-1.6.  Effective as of January 1, 2011, the NYLL was amended such that the spread of hours regulations "apply to all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay." 12 N.Y.C.R.R. § 146-1.6(d); see also, e.g., Zhen Ming Chen v. New

Fresco Tortillas Taco LLC, 15 Civ. 2158, 2015 WL 5710320 at *3 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.); Saravia v. 2799 Broadway Grocery LLC, 12 Civ. 7310, 2014 WL 2011720 at *5 n.4 (S.D.N.Y. May 16, 2014) ("'12 NYCRR § 146-1.6(d) requires that all employees of hospitality industry, which includes restaurants and all-year hotels, receive spread of hours compensation regardless of given employee's regular rate of pay.'" (quoting Angamarca v. Pita Grill 7 Inc., 11 Civ. 7777, 2012 WL 3578781 at *6 (S.D.N.Y. Aug. 2, 2012))); Yuquilema v. Manhattan's Hero Corp., 13 Civ. 461, 2014 WL 4207106 at *4 (S.D.N.Y. Aug. 20, 2014) (The N.Y.C.R.R. "was amended . . . to extend eligibility effective January 1, 2011 for 'spread of hours' pay to 'all employees in restaurants . . . regardless of a given employee's regular rate of pay.'"), R. & R. adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); Flores v. Anjost Corp., 284 F.R.D. 112, 119 (S.D.N.Y. 2012).[2]

 To determine plaintiffs' unpaid spread of hours wages, counsel multiplied the number

---

[2] Prior to January 1, 2011, spread of hours compensation was required under New York law, but most courts in this Circuit ruled that the spread of hours provision applied only to employees earning minimum wage.  See, e.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *6-7 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.); Pinovi v. FDD Enters., Inc., 13 Civ. 2800, 2015 WL 4126872 at *5 (S.D.N.Y. July 8, 2015) ("[R]ecent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum wage level." (quotations omitted)); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *6 (S.D.N.Y. Sept. 19, 2011) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011); Zubair v. EnTech Eng'g P.C., 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011) (New York's spread of hours provision "is properly limited to those employees who receive only the minimum compensation required by law."); Franklin v. Breton Int'l, Inc., 06 Civ. 4877, 2006 WL 3591949 at *4 (S.D.N.Y. Dec. 11, 2006) ("The 'spread of hours' provision in the New York regulations requires an additional hour's pay at the 'basic minimum hourly wage rate' for any day where the spread of hours in a day exceeds ten hours.  The provision, however, applies only to workers earning the minimum wage." (citation omitted)); Chan v. Triple 8 Palace, Inc., 03 Civ. 6048, 2006 WL 851749 at *21 (S.D.N.Y. Mar. 30, 2006) (Lynch, D.J.) ("The plain text of § [142-2.4] ensures an additional wage only 'in addition to the minimum wage' required under New York law (emphasis added).  It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.").  Because plaintiffs were paid below the minimum wage, they are entitled to spread of hours wages for the entire limitations period.

of days per week that each plaintiff worked in excess of ten hours by the statutory minimum wage and the number of weeks in a given pay period.  (Dkt. No. 38: Androphy Aff. ¶ 60 & Ex. E: Calculations Chart.)  The Court agrees with counsel's methodology and has reviewed the arithmetic in the chart provided.  (Androphy Aff. Ex E: Calculations Chart.)  Correcting for an error with respect to Rodriguez,[3/] the Court finds that plaintiffs are entitled to spread of hours pay as follows: Andrade $3,073.75; Rodriguez $14,513.38; Juarez $6,294.75.  (See Androphy Aff. ¶¶ 76-78 & Ex. E.)

### D.    Liquidated Damages

Plaintiffs seek double liquidated damages, under both the FLSA and the NYLL. (Dkt. No. 38: Androphy Aff. ¶ 88-89 & Ex. E: Calculations Chart.)

Under the FLSA, a plaintiff is entitled to liquidated damages of 100%.  29 U.S.C. § 216(b); see, e.g., Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049, 2015 WL 3855285 at *1 (S.D.N.Y. June 19, 2015); Marfak v. Peretta, 10 Civ. 7785, 2011 WL 1758625 at *1 (S.D.N.Y. May 6, 2011) ("The FLSA imposes the obligation to pay unpaid overtime compensation and 'an additional equal amount as liquidated damages' on employers who violate its requirement that overtime wages be paid." (quoting 29 U.S.C. § 216(b))); Alejo v. Darna Rest., 09 Civ. 5436, 2010 WL 5249383 at *6 (S.D.N.Y. Dec. 17, 2010) (Peck, M.J.), R. & R. adopted as modified, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011).[4/]  Here, the FLSA's three-year statute of limitations for willful violations applies, and

---

[3/]    Rodriguez asserts that between August 2014 and October 2014 he worked only one shift per week exceeding ten hours.  (Rodriguez Aff. ¶ 16.)  Accordingly, for that seven week period when the prevailing minimum wage was $8 per hour, Rodriguez is entitled to $56 in spread of hours pay, not $336 as indicated in counsel's chart.  (Ex. E: Calculations Chart at 4.)

[4/]    See also, e.g., Vasquez v. Ranieri Cheese Corp., No. 07-CV-464,  2010 WL 1223606 at *18 (E.D.N.Y. Mar. 26, 2010) ("FLSA entitles an employee to recover an amount equal to the (continued...)

plaintiffs are entitled to liquidated damages on their minimum wage and overtime claims from October 16, 2011.  See 29 U.S.C. § 255(a).

In addition to federal liquidated damages, plaintiffs seek state liquidated damages for their unpaid wages.  (See pages 3, 6 above.)  Under New York law at the start of Rodriguez' and Juarez' employment, a plaintiff was entitled to liquidated damages of 25% of the owed wages where the defendant's violation was "willful."  N.Y. Labor Law §§ 198(1-a), 663(1) (in effect prior to Apr. 9, 2011).  As defendants defaulted, plaintiffs' allegations that defendants' conduct was "willful" (see page 3 above) are credited. (See also cases cited at page 8 above.)

On December 10, 2010, the New York legislature amended New York Labor Law §§ 198(1–a) and 663(1) to incorporate the federal standard, increasing the amount of available liquidated damages from 25% to 100%, effective April 11, 2011.  2010 N.Y. Sess. Laws ch. 564 §§ 1, 3; N.Y. Labor Law §§ 198(1–a), 663(1).  In the absence of clear legislative intent, courts in this district have declined to apply the 2011 amendment retroactively.  See, e.g., Kim v. Kum Gang, Inc., 12 Civ. 6344, 2015 WL 2222438 at *31 (S.D.N.Y. Mar. 19, 2015) (collecting cases); Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 318-19 (S.D.N.Y. 2014); Chenensky v. N.Y. Life Ins. Co., 07 Civ. 11504, 2012 WL 234374 at *2-3 (S.D.N.Y. Jan. 10, 2012);  Wicaksono v. XYZ 48 Corp., 10 Civ. 3635, 2011 WL 2022644 at *6 n.2 (S.D.N.Y. May 2, 2011), R. & R. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).

_____

[4/]      (...continued)
unpaid wages (i.e., an additional 100% of the unpaid wages awarded) in the form of liquidated damages."); Dong v. CCW Fashion Inc., 06 Civ. 4973, 07 Civ. 9741, 2009 WL 884680 at *4 (S.D.N.Y. Feb. 19, 2009) ("The FLSA allows for an additional 100% of the amount owed for minimum wage and/or overtime violations, which means that those amounts are doubled."), R. & R. adopted, 2009 WL 884668 (S.D.N.Y. Apr. 1, 2009); Ting Yao Lin v. Hayashi Ya II, Inc., 08 Civ. 6071, 2009 WL 289653 at *7 (S.D.N.Y. Jan. 30, 2009) (Peck, M.J.), R. & R. adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009).

"There is no appellate authority" in this Circuit "as to whether a plaintiff may recover cumulative (sometimes called 'simultaneous' or 'stacked') liquidated damages under the FLSA and NYLL . . . ." Inclan v. N.Y. Hosp. Grp., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).  Nevertheless, "an increasing number of FLSA cases"–especially since the NYLL was amended to provide 100% liquidated damages–have ruled that a plaintiff is not entitled to both federal and state liquidated damages because they serve the same practical purposes in compensating the plaintiff and deterring wage violations.  Yun Hong Hua v. Eight Star Inc., No. 15 CIV. 0275, 2015 WL 2354322 at *4 (E.D.N.Y. May 15, 2015) (collecting cases) ("[T]he use of the FLSA and state law to award double liquidated damages is effectively a judge-created treble damage remedy that neither legislature, Congress or New York, has envisioned."); see also, e.g., Quiroz v. Luigi's Dolceria, Inc., No. 14-CV-871, 2016 WL 2869780 at *6 (E.D.N.Y. May 17, 2016) ("[T]he recent trend has moved away from awarding liquidated damages under both the FLSA and the NYLL, and instead making a single award under the statute that provides the greater recovery.  Continuing to follow that trend, I decline to provide cumulative liquidated damages under both statutes." (citing cases)); Lopez v. Ploy Dee, Inc., 15 Civ. 647, 2016 WL 1626631 at *2 n.1 (S.D.N.Y. Apr. 21, 2016) ("there is persuasive authority in this circuit holding that FLSA plaintiffs cannot 'double recover' liquidated damages under both" the FLSA and the NYLL); Hengjin Sun v. China 1221, Inc., 12 Civ. 7135, 2016 WL 1587242 at *4 (S.D.N.Y. Apr. 19, 2016) ("NYLL's recent amendments 'have undermined the basis,' such as it was, for distinguishing between FLSA's and NYLL's liquidated damages provisions.  In the absence of appellate authority on the subject, the Court joins the emerging jurisprudential trend and finds that an employee may not recover cumulative liquidated damages under both the FLSA and NYLL for overlapping claims after November 24, 2009." (citations omitted)); Banegas v. Mirador Corp., 14 Civ. 8491, 2016 WL 1451550 at *2 n.2 (S.D.N.Y. Apr. 12, 2016); Castillo v. RV

Transp., Inc., 15 Civ. 0527, 2016 WL 1417848 at *3 (S.D.N.Y. Apr. 11, 2016); Chen v. JP Standard

Constr. Corp., No. 14-CV-1086, 2016 WL 2909966 at *12-13 (E.D.N.Y. Mar. 18, 2016), R. & R.

adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016); Perez v. Queens Boro Yang Cleaner, Inc.,

No. 14-CV-7310, 2016 WL 1359218 at *6 (E.D.N.Y. Mar. 17, 2016), R. & R. adopted, 2016 WL

1337310 (E.D.N.Y. Apr. 5, 2016); Jeong Woo Kim v. 511 E. 5th St., LLC, 133 F. Supp. 3d 654, 667

(S.D.N.Y. 2015) ("The Plaintiffs seek to recover liquidated damages under both statutes.  Prior to

the change in the [New York Labor] law, many courts permitted such recoveries, reasoning that the

liquidated damages provisions of the FLSA and NYLL served different purposes.  As Judge

Buchwald has explained [in Inclan v. N.Y. Hospitality Grp., Inc.], however, such double recoveries

should no longer be permitted."); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15 Civ.

2158, 2015 WL 5710320 at *9 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.); Bosoro v. Am.

Comprehensive Healthcare Med. Grp., P.C., No. 14-CV-1099, at *7 (E.D.N.Y. Aug. 31, 2015), R.

& R. adopted, 2015 WL 5686481 (E.D.N.Y. Sept. 25, 2015); Chowdhury v. Hamza Exp. Food

Corp., No. 14-CV-150, 2015 WL 5541767 at *8 (E.D.N.Y. Aug. 21, 2015), R. & R. adopted, 2015

WL 5559873 (E.D.N.Y. Sept. 18, 2015); Santana v. Brown, 14 Civ. 4279, 2015 WL 4865311 at *5

(S.D.N.Y. Aug. 12, 2015); Garcia v. JonJon Deli Grocery Corp., 13 Civ. 8835, 2015 WL 4940107

at *6 (S.D.N.Y. Aug. 11, 2015); McGlone v. Contract Callers Inc., 114 F. Supp. 3d 172, 174

(S.D.N.Y. 2015); Olvera v. Los Taquitos Del Tio Inc., No. 15-CV- 1262, 2015 WL 3650238 at *2

n.2 (E.D.N.Y. June 11, 2015).[5/] The "prevailing view" now is that double liquidated damages should

---

[5/]    Accord, e.g., Inclan v. N.Y. Hospitality Grp., Inc., 95 F. Supp. 3d at 505 (citing cases);
Jimenez v. Computer Express Int'l Ltd., No. 14-CV-5657, 2015 WL 1034478 at *2
(E.D.N.Y. March 10, 2015); Chuchuca v. Creative Customs Cabinets Inc., 13 Civ. 2506,
2014 WL 6674583 at *15-16 (E.D.N.Y. Nov. 25, 2014); Man Wei Shiu v. New Peking Taste
Inc., No. 11-CV-1175, 2014 WL 652355 at *13 (E.D.N.Y. Feb. 19, 2014); Ramirez v. H.J.S.
(continued...)

not be awarded.[6/]

---

[5/]    (...continued)
Car Wash Inc., No. CV-11-2664, 2013 WL 1437600 at *7 (E.D.N.Y. Apr. 9, 2013); Villegas
v. Monica Rest. Corp., No. 12-CV-4131, 2013 WL 4046261 at *3 (E.D.N.Y. Aug. 8, 2013);
Gortat v. Capala Bros., 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013); Parilla v. Salt & Pepper
on 33rd St. Inc., 12 Civ. 6382, 2013 WL 4536628 at *2 (S.D.N.Y. Apr. 8, 2013); Fu v. Pop
Art Int'l, 10 Civ. 8562, 2011 WL 4552436 at *5 (S.D.N.Y. Sept. 19, 2011) (Peck. M.J.), R.
& R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011);
Pineda-Herrera v. Da-Ar-Da, Inc., No. 09-CV-5140, 2011 WL 2133825 at *4-5 (E.D.N.Y.
May 26, 2011) ("[B]oth forms of damages seek to deter wage-and-hour violations.  Both do
so in a manner calculated to compensate the party harmed.  Because this Court finds no
persuasive basis to distinguish the two forms of damages, the Court will award the greater
of the two where both forms of damages are otherwise available for the same violations."
(citations omitted)); Jin v. Pac. Buffet House, Inc., No. CV-06-579, 2009 WL 2601995 at
*9 (E.D.N.Y. Aug. 24, 2009) (Rejecting double recovery because "[r]egardless of the
purpose, the award under the FLSA is four times the award under state law, and thus is more
than sufficient to satisfy any punitive purpose the state law is intended to serve."); Chun Jie
Yin v. Kim, No. 07 CV 1236, 2008 WL 906736 at *7 (E.D.N.Y. Apr. 1, 2008) ("[T]o the
extent the 'liquidated damages' available under the FLSA can properly be characterized as
compensation, it is apparent that the 'liquidated damages' available under the state statute
compensates the exact same harm-namely, the harm caused by the defendant's culpable state
of mind.  As a result, it would be improper to award [plaintiff] both forms of compensation
for the same harm."); Pavia v. Around The Clock Grocery, Inc., No. 03 CV 6465, 2005 WL
4655383 at *8 n.13 (E.D.N.Y. Nov. 15, 2005) (New York Labor Law "provides for a
payment of liquidated damages of 25% of all unpaid regular wages, including spread of
hours wages.  As the Court has already recommended liquidated damages calculated under
the FLSA for the unpaid minimum and overtime wages, [plaintiff] is only entitled to receive
25% of his spread of hours wages under state law.").

[6/]    Courts Shy Away From Treble Damages in Wage, Hour Suits, N.Y. Law Journal, Feb. 29,
2016 ("Over the past several years, the courts have reversed course from the initial bevy of
federal and state court decisions applying 200 percent liquidated damages.  Countless
applications seeking 200 percent liquidated damages have since been denied by numerous
judges who find such recoveries to be duplicative and unnecessary.  These courts continue
to reason that '[b]oth forms of damages seek to deter wage-and-hour violations in a manner
calculated to compensate the [plaintiff].'  Even judges that still apply both NYLL and FLSA
liquidated damages together have noted the recent trend away from granting 200 percent
liquidated damages.  In fact, in some instances judges have begun abrogating their own
precedent, and now embrace the view that double liquidated damages under both the NYLL
and FLSA are inappropriate given the similarities between both statutes.  Today, the
prevailing view appears to be that applying liquidated damages remedies under both the
NYLL and FLSA results in 'a windfall that neither the state nor the federal legislature
(continued...)

In keeping with the "prevailing view" as well as this Court's previous rulings that plaintiffs should not be awarded liquidated damages under both the FLSA and the NYLL for the same time period, Rodriguez and Juarez (who began working for defendants several years prior to Andrade) are entitled to liquidated damages at the state statutory rate of 25% on minimum, overtime and spread of hours wage claims arising prior to April 11, 2011, and at the state statutory rate of 100% on claims arising between April 11, 2011 and October 15, 2011.   Plaintiffs additionally are entitled to liquidated damages at the state statutory rate of 100% on the spread of hours amounts between April 11, 2011 and October 16, 2014, for which there is no federal counterpart.  Finally, plaintiffs are entitled to liquidated damages at the federal statutory rate of 100% for their minimum wage and overtime claims arising on or after October 16, 2011.  In total, plaintiffs are entitled to single liquidated damages as follows: Andrade $47,990.57; Rodriguez $134,722.95; Juarez $38,040.81.

| | Unpaid Minumum and Overtime wages prior to April 11, 2011 [x .25] (NYLL) | Unpaid Minimum and Overtime wages on or after April 11, 2011 until October 15, 2011 (NYLL) | Unpaid Minimum and Overtime Wages on or after October 16, 2011 (FLSA) | Unpaid Spread of Hours premium prior to April 11, 2011 [x .25] (NYLL) | Unpaid Spread of Hours premium on or after April 11, 2011 (NYLL) | Total Liquidated Damages Owed |
|---|---|---|---|---|---|---|
| Julio Andrade | $0 | $0 | $44,916.82 | $0 | $3,073.75 | $47,990.57 |
| Leoboardo Rodriguez | $36,542.76 x .25= $9,135.69 | $15,992.44 | $99,970.50 | $6,518.75 x .25 = $1,629.69 | $7,994.63 | $134,722.95 |
| Luis Juarez | $54,553 x .25 = $13,638.25 | $14,580 | $7,020 | $4,656.25 x .25 = $1,164.06 | $1,638.50 | $38,040.81 |

### E.   <u>Wage Notice And Record Keeping Violations</u>

Plaintiffs seek to recover damages for defendants' failure to provide regular wage

---

[6]/     (...continued)
appears explicitly to have intended.'").

statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL effective April 9, 2011.  (See Dkt. No. 38: Androphy Aff. ¶¶ 93-96.)  The WTPA requires employers to

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. . . . [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Labor Law § 195(3).  The WTPA does not apply retroactively, and thus prior to April 9, 2011, defendants were not obliged to provide plaintiffs with wage statements.  See, e.g., Haas v. June 2, 2016 N.Y., Inc., 13 Civ. 8130, 2015 WL 4884858 at *25 (S.D.N.Y. Aug. 13, 2015), R. & R. adopted in relevant part, 2015 WL 5785023 (S.D.N.Y. Sept. 30, 2015); Inclan v. N.Y. Hospitality Grp., Inc., 95 F. Supp. 3d 490, 501 (S.D.N.Y. 2015).  Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for violations of the wage statement requirement of $100 per work week, not to exceed $2,500.  See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-d).

As plaintiffs assert that they never were given accurate and compliant wage statements (see pages 4, 5, 6 above), from April 9, 2011 through the conclusion of their employment, each plaintiff is entitled to statutory damages of $100 per work week, not to exceed $2,500, as follows:

| | Period Start | Period End | Weeks in Period | Statutory Damages [weeks in period x $100, not to exceed $2,500] |
|---|---|---|---|---|
| Julio Andrade | 6/25/2012 | 9/28/2014 | 118.5 | $2,500 |
| Leoboardo Rodriguez | 4/9/2011 | 10/1/2014 | 181 | $2,500 |
| Luis Juarez | 4/9/2011 | 10/1/2014 | 181 | $2,500 |

Plaintiffs also assert that they never were provided with wage notices.  (See pages 4, 5, 6 above.)  The WTPA requires that at the time of hiring, employers furnish each employee

> in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

N.Y. Labor Law § 195(1)(a).  Prior to December 29, 2014, employers were required to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer."  N.Y. Labor Law § 195(1)(a) (eff. April 9, 2011 to Dec. 28, 2014); see, e.g., Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 475 n.34 (S.D.N.Y. Aug. 12, 2015).  Prior to February 27, 2015, the WTPA entitled employees to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500.  See 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Labor Law § 198(1-b).

Andrade was hired in June 2012, after the April 2011 effective date of the WTPA (see page 3 above), and thus is entitled to statutory damages of $50 per week throughout his employment.  Rodriguez and Juarez were hired before the WTPA's effective date.  (See pages 4, 5

above.)  Accordingly, Rodriguez and Juarez are not entitled to wage notice damages from the date

they were hired.  On or before February 1, 2012, however, and on or before that date annually

thereafter, defendants were required to provide Rodriguez and Juarez with wage notices.  Thus, they

are entitled to recover statutory damages of $50 per work week from that date for the duration of

their employment.  Accordingly, plaintiffs' statutory damages for annual wage notice violations are

as follows:

| | Period Start | Period End | Weeks in Period | Statutory Damages [weeks in period x $50, not to exceed $2,500] |
|---|---|---|---|---|
| Julio Andrade | 6/25/2012 | 9/28/2014 | 118.5 | $2,500 |
| Leobardo Rodriguez | 2/1/2012 | 10/1/2014 | 138.5 | $2,500 |
| Luis Juarez | 2/1/2012 | 10/1/2014 | 138.5 | $2,500 |

In total, for wage statement and notice violations, plaintiffs' damages are as follows:

Andrade $5,000; Rodriguez $5,000; and Juarez $5,000.

## F.    **Prejudgment Interest**

Plaintiffs seek "pre-judgment and post-judgment interest as applicable" on their

claims.  (Dkt. No. 1: Compl. Wherefore ¶ p; see also Dkt. No. 38: Androphy Aff. ¶¶ 97-100.)

Plaintiffs only seek prejudgment interest for claims and periods "for which they are not receiving

liquidated damages under the FLSA."  (Androphy Aff. ¶ 97.)[7]

---

[7]    Interest is not awarded under the FLSA, as interest is assumed to be included under
liquidated compensatory damages. See, e.g., Brock v. Superior Care, Inc., 840 F.2d 1054,
1065 (2d Cir. 1988) ("It is well settled that in an action for violations of the Fair Labor
Standards Act prejudgment interest may not be awarded in addition to liquidated damages.");
Paz v. Piedra, 09 Civ. 3977, 2011 WL 121103 at *13 (S.D.N.Y. Jan. 12, 2012); Fu v. Pop
Art Int'l Inc., 2011 WL 6092309 at *2.  For that reason, courts do not award statutory
prejudgment interest on any portion of the recovery for which liquidated damages were
awarded under the FLSA.  See, e.g., Tackie v. Keff Enters. LLC, 14 Civ. 2074, 2014 WL
4626229 at *5 & n.5 (S.D.N.Y. Sept. 16, 2014) (Oetken, D.J.) ("[P]laintiffs are entitled to
(continued...)

The Second Circuit has held that even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate.  See, e.g., Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999), cert. denied, 528 U.S. 1119, 120 S. Ct. 940 (2000); Begum v. Ariba Disc., Inc., 12 Civ. 6620, 2015 WL 223780 at *3 (S.D.N.Y. Jan. 16, 2015); McClean v. Garage Mgmt. Corp., 09 Civ. 9325, 10 Civ. 3950, 2012 WL 1358739 at *10 (S.D.N.Y. Apr. 12, 2012) ("Because NYLL liquidated damages and prejudgment interest 'serve fundamentally different purposes', the Court of Appeals has observed that plaintiffs may recover both for the same unpaid wages."); Olvera v. New Ko-Sushi, 10 Civ. 4643, 2011 WL 724699 at *5 (S.D.N.Y. Feb. 16, 2011).  This is because "'[p]re-judgment interest and liquidated damages under the [New York] Labor Law are not functional equivalents.'"  Fu v. Pop Art Int'l, Inc., 10 Civ. 8562, 2011 WL 6092309 at *2 (S.D.N.Y. Dec. 7, 2011) (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d at 265).

The statutory interest rate in New York of nine percent, C.P.L.R. § 5004, would be applicable to plaintiffs' NYLL unpaid minimum, overtime and spread of hours wage claims (that do not overlap with FLSA recovery).  Nevertheless, plaintiffs' damages chart only seeks prejudgment interest on unpaid spread of hours wages.  (Dkt. No. 38: Androphy Aff. Ex. E: Calculations Chart at 3-4.)  The Court cannot award plaintiffs more than they seek.  Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15 Civ. 2158, 2015 WL 5710320 at *8 (S.D.N.Y. Sept. 25, 2015) (Peck, M.J.).  Accordingly, interest is applied only to plaintiffs' unpaid spread of hours wages.

Because the unpaid spread of hours wages occurred at different times, interest is calculated pursuant to C.P.L.R. § 5001(b) ("Where . . . damages were incurred at various times,

---

[7]/    (...continued)
prejudgment interest on any compensatory damages awarded under the NYLL for which there is no corresponding award of liquidated damages under FLSA."); Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 321-22 (S.D.N.Y. 2014).

interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.").  Prejudgment interest is calculated from the midpoint of plaintiffs' employment with defendants up to and including the date of this Report and Recommendation.[8/]

      Andrade began working for defendants on June 25, 2012, and ceased on September 28, 2014.  (See page 3 above.)  The midpoint date of his employment is August 11, 2013.  The period from August 11, 2013 to June 3, 2016, the date of this Report and Recommendation, is 1,027 days.  At a rate of nine percent simple interest per year, defendants owe Andrade interest of $780.52 on his spread of hours wages.[9/]

      Rodriguez asserts that he began working for defendants in November 2007, but there is no evidence that he is owed spread of hours wages for any time prior to October 16, 2008.  (See Calculations Chart.)  Accordingly, the Court uses October 16, 2008 as the date both Rodriguez and Juarez began working for defendants, and October 1, 2014 as the date they ceased working for defendants.  The midpoint date of Rodriguez' and Juarez' employment is October 9, 2011.  The period from October 9, 2011 to June 3, 2016, the date of this Report and Recommendation, is 1,699 days.  At a rate of nine percent simple interest per year, defendants owe Rodriguez interest of

---

[8/]    Prejudgment interest applies only to the spread of hours compensatory damages and not also to the NYLL liquidated damages on those wages.  See, e.g., Janus v. Regalis Constr., Inc., 11-CV-5788, 2012 WL 3878113 at *8 (E.D.N.Y. July 23, 2012), R. & R. adopted, 2012 WL 3877963 (Sept. 4, 2012); Chan v. Sung Yue Tung Corp., 03 Civ. 6048, 2007 WL 1373118 at *10 (S.D.N.Y. May 8, 2007) (Lynch, D.J.).

[9/]    Andrade's damages under the NYLL for unpaid spread of hours wages are $3,073.75.  (See chart on page 13 above.)  Interest will continue to accrue at the rate of $0.76 per day until judgment is entered.

$6,082.42 on his unpaid spread of hours wages,[10] and owe Juarez interest of $2,633.45 on his unpaid spread of hours wages.[11]

### G.      Attorneys' Fees and Costs

Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); accord, e.g., Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"); Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008) ("In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs."); Imbeault v. Rick's Cabaret Int'l Inc., 08 Civ. 5458, 2009 WL 2482134 at *1 (S.D.N.Y. Aug. 13, 2009) (Lynch, D.J.) ("Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants.").[12]

---

[10]      Rodriguez' damages under the NYLL for unpaid spread of hours wages are $14,513.38.  (See chart on page 13 above.)  Interest will continue to accrue at the rate of $3.58 per day until judgment is entered.

[11]      Juarez' damages under the NYLL for unpaid spread of hours wages are $6,294.75.  (See chart on page 13 above.)  Interest will continue to accrue at the rate of $1.55 per day until judgment is entered.

[12]      See also, e.g., Garcia v. Jambox, Inc., 14 Civ. 3504, 2015 WL 2359502 at *2 (S.D.N.Y. Apr. 27, 2015) ("The FLSA and the NYLL grant prevailing plaintiffs their attorney's fees 'to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" (quoting Aguilera v. Cookie Panache, 13 Civ. 6071, 2014 WL 2115143 at *2 (S.D.N.Y. May 20, 2014))); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (Peck, M.J.) ("Under the FLSA and N.Y. Labor Law, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."); Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) ("In an action pursuant to the FLSA, a 'prevailing party' must be
(continued...)

Plaintiffs seek $650 in costs.  (Dkt. No. 38: Androphy Aff. ¶ 103 & Ex. F: Billing Records at 3.)  Counsel's requests for costs is not supported by any documentation aside from a list of expenditures.  (See Androphy Aff. Ex. F: Billing Records at 3.)  The Court takes judicial notice of the Court filing fee amount of $350; in the absence of supporting documentation as to any further costs, only $350 is recoverable.  E.g., Baltierra v. Advantage Pest Control Co., 14 Civ. 5917, 2015 WL 5474093 at *12 (S.D.N.Y. Sept. 18, 2015) (Peck, M.J.); Carrasco v. W. Village Ritz Corp., 11 Civ. 7843, 2012 WL 2814112 at *7 (S.D.N.Y. July 11, 2012) (Peck, M.J.), R. & R. adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012); Fu v. Pop Art Int'l Inc., 10 Civ. 8562, 2011 WL 4552436 at *5 (S.D.N.Y. Sept. 19, 2011 ) (Peck, M.J.), R. & R. adopted as modified on other grounds, 2011 WL 6092309 (S.D.N.Y. Dec. 7, 2011).  Accordingly, the Court awards plaintiffs $350 for costs.

Plaintiffs request $15,557.50 in attorneys' fees.  (Androphy Aff. ¶ 102 & Ex. F: Billing Records.)  Plaintiffs seek an hourly rate of $450 per hour for attorney Michael Faillace, who has been practicing law for thirty-three years.  (Androphy Aff. ¶ 105(a).)  Plaintiffs seek an hourly rate of $400 per hour for attorney Joshua Androphy, who has been practicing law since 2005.  (Androphy Aff. ¶ 105(b).)  Courts in this Circuit recently have found $425 per hour to be a reasonable rate for Mr. Faillace's services, and $300 per hour to be a reasonable rate for Mr. Androphy's services.  See, e.g., Rosendo v. Everbrighten Inc., 13 Civ. 7256, 2015 WL 1600057 at *8-9 (S.D.N.Y. Apr. 7, 2015) (collecting cases), R. & R. adopted, 2015 WL 4557147 (S.D.N.Y. July 28, 2015); Yuquilema v. Manhattan's Hero Corp., No. 13 Civ. 461, 2014 WL 4207106 at *14 (S.D.N.Y. Aug. 20, 2014) (citing cases), R. & R. adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30,

---

12/   (...continued)
awarded reasonable attorneys' fees and costs . . . .  Likewise, the NYLL requires that '[i]n any action . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees . . . .'"(citations omitted)).

2014).  This Court agrees that those rates are more appropriate, and will reduce the amounts claimed

to $425 per hour for Mr. Faillace and $300 per hour for Mr. Androphy.

Plaintiffs' counsel provides contemporaneous billing records and seeks compensation

for 10.75 hours of work by Mr. Faillace, and 26.8 hours for Mr. Androphy.  (Ex. F: Billing Records.)

While this is not an excessive number of hours, some of the billing entries are vague, others reflect

administrative work, and the time spent on certain tasks seems excessive.[13]  Accordingly, the hours

expended by counsel should be reduced by ten percent, to 9.68 hours for Mr. Faillace, and 24.12

hours for Mr. Androphy.  See, e.g., Zhen Ming Chen v.  New Fresco Tortillas Taco LLC, 15 Civ.

2158, 2015 WL 5710320 at *10 (S.D.N.Y. Sept. 25, 2015) (10% reduction); Lora v. J.V. Car Wash,

Ltc., 11 Civ. 9010, 2015 WL 4496847 at *14 (S.D.N.Y. July 24, 2015) (Peck, M.J.), R. & R.

adopted, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015); Gonzalez v. Scalinatella, Inc., 112 F. Supp.

3d 5, 30 (S.D.N.Y. 2015) (reducing excessive fees for one attorney by 10%); Lane Crawford LLC v.

Kelex Trading (CA) Inc., 12 Civ. 9190, 2013 WL 6481354 at *10 (S.D.N.Y. Dec. 3, 2013) (Peck,

M.J.) (reducing attorneys' fees by 15% for excessive time and vague, duplicative billing entries), R.

& R. adopted, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014); Allende v. Unitech Design, Inc., 783 F.

Supp. 2d at 515 (reducing attorneys' fees by 7% for duplicative work and excess time spent on

certain projects); Trustees of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp., 09 Civ. 9997,

2011 WL 767162 at *5 (S.D.N.Y. Mar. 4, 2011) (Peck, M.J.) (reducing attorneys' fees by 10%), R.

& R. adopted in relevant part, 2011 WL 1641981 (S.D.N.Y. Apr. 29, 2011); VFS Fin., Inc. v.

---

[13]     For example, counsel spent 6 hours drafting the complaint, and an additional 1.8 hours
finalizing and filing the complaint.  (Ex. F: Billing Records at 1.)  Similarly, counsel spent
6.5 hours finalizing and filing pretrial papers (Ex. F: Billing Records at 2), at a time when
defense counsel had been allowed to withdraw and there was no indication that defendants
would defend the case pro se.

Pioneer Aviation LLC, 08 Civ. 7655, 2009 WL 2447751 at *5 & n.8 (S.D.N.Y. Aug. 11, 2009) (Peck, M.J.) (10% fee reduction where "attorneys' billing entries are overly vague or duplicative." (citing cases)); Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., 04 Civ. 3854, 2008 WL 4833025 at *7 (S.D.N.Y. Nov. 3, 2008) (Peck, M.J.) (5% across-the-board fee reduction) (citing cases)); Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc., 04 Civ. 2666, 2008 WL 4925020 at *2 (S.D.N.Y. Nov. 10, 2008) (Daniels, D.J. & Peck, M.J.) (5% fee reduction "to take into account attorney hours billed for the performance of paralegal-type work, as well as duplicative charges.").

Using the reduced hours and hourly rates above, plaintiffs are entitled to $11,350 in attorneys' fees.

**H.      Joint and Several Liability**

Under both the FLSA and NYLL, individual defendants Jose Alonso and Aristizabal Edilson are considered employers and thus individually liable along with 168 First Ave. Restaurant Ltd.  29 U.S.C. § 203(d); N.Y. Labor Law §§ 2(5)-(6); see, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139-40 (2d Cir. 1999); Guaman v. Krill Contracting, Inc., No. 14-CV-4242, 2015 WL 3620364 at *3 (E.D.N.Y. June 9, 2015); Liu v. Jen Chu Fashion Corp., 00 Civ. 4221, 2004 WL 33412 at *6 (S.D.N.Y. Jan. 7, 2004) (Peck, M.J.); Chang v. New Silver Palace Rest., Inc., 272 F. Supp. 2d 314, 318 & n.6 (S.D.N.Y. 2003) (test for employer under N.Y. Labor Law is same as Herman test under FLSA).  Because defendants defaulted, they cannot now challenge liability, and thus are held jointly and severally liable.  See, e.g., Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158, 161 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability. . . ."), cert. denied, 506 U.S. 1080, 113 S. Ct. 1049 (1993); Mestousis Enters. Inc., v. Concord Blue Inc., 11 Civ. 3384, 2012 WL 254987 at *5

n.13 (S.D.N.Y. Jan. 27, 2012) (Peck, M.J.), R. & R. adopted, 2012 WL 1193752 (S.D.N.Y. Apr. 10, 2012); Felix Produce Corp., v. New Lots Food Corp., No. 08-CV-5161, 2009 WL 2985444 at *2 (E.D.N.Y. Sept. 14, 2009) ("By virtue of the well-pleaded factual allegations in the complaint which are deemed true by virtue of [defendants'] default, the undersigned finds that [plaintiff] has established joint and several liability . . . ."); Ting Yao Lin v. Hayashi, 08 Civ. 6071, 2009 WL 289653 at *8 (S.D.N.Y. Jan. 30, 2009) (Peck, M.J.); La Barbera v. Les Sub-Surface Plumbing, Inc., No. 06 CV 3343, 2008 WL 906695 at *4 (E.D.N.Y. Apr. 3, 2008) ("[P]laintiffs have adequately pled, and by virtue of defendants' default, have established the joint and several liability of" defendants.); Chaman LAL Setia Exports Ltd. v. Sawhney, 00 Civ. 2838, 2003 WL 21649652 at *4 (S.D.N.Y. May 28, 2003) ("[D]efendants' joint and several liability is established by the allegations made in the complaint and [the District Judge's] granting of a default judgment.").

## CONCLUSION

Accordingly, judgment should be entered against the defendants, 168 First Ave Restaurant Ltd., Jose Alsonso and Aristazabal Edilson, jointly and severally, for the plaintiffs, as follows: Andrade $101,751.66; Rodriguez $312,785.94; and Juarez $128,122.01 (plus continuing prejudgment interest until judgment is entered), as well as costs and attorneys' fees of $11,700.

| | Unpaid Minimum and Overtime wages | Unpaid Spread of Hours premium | Liquidated Damages | Wage Statement and Notice Violations | Prejudgment Interest | Total |
|---|---|---|---|---|---|---|
| Julio Andrade | $44,916.82 | $3,073.75 | $47,990.57 | $5,000 | $780.52 | $101,751.66 |
| Leobardo Rodriguez | $152,467.19 | $14,513.38 | $134,722.95 | $5,000 | $6,082.42 | $312,785.94 |
| Luis Juarez | $76,153 | $6,294.75 | $38,040.81 | $5,000 | $2,633.45 | $128,122.01 |
| | | | | | Attorneys' Fees and Costs | $11,700 |
| | | | | | **TOTAL** | **$554,359.61** |

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken, 40 Foley Square, Room 2101, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Oetken (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Ingram v. Herrick, 475 F. App'x 793, 793 (2d Cir. 2012); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:     New York, New York
           June 3, 2016

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to:     168 First Ave Restaurant Ltd. (mail)
               Jose Alonso (mail)
               Aristizabal Edilson (mail)
               Counsel (ECF)
               Judge J. Paul Oetken